```
                       UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF FLORIDA
                              MIAMI DIVISION
                    CASE NO. 12-20947-CRIMINAL-LENARD


 UNITED STATES OF AMERICA,            Miami, Florida

              Plaintiff,              July 21, 2014

         vs.                          2:53 p.m. to 3:12 p.m.

 HENRY TARRIO, JR.,

              Defendant.              Pages 1 to 13
 _____

                      RULE 35 MOTION HEARING
              BEFORE THE HONORABLE JOAN A. LENARD,
                  UNITED STATES DISTRICT JUDGE



 APPEARANCES:


 FOR THE GOVERNMENT:        VANESSA S. JOHANNES, ESQ.
                            ASSISTANT UNITED STATES ATTORNEY
                            SPECIAL PROSECUTIONS SECTION
                            99 Northeast Fourth Street
                            Miami, Florida 33132


 FOR THE DEFENDANT:         JEFFREY E. FEILER, ESQ.
                            LAW OFFICES OF JEFFREY E. FEILER
                            7685 Southwest 104th Street
                            Suite 200
                            Miami, Florida 33156


 REPORTED BY:               LISA EDWARDS, RDR, CRR
                            (305) 439-7168
                            Reporterlisaedwards@gmail.com
```

1              THE COURT:  United States of America versus Henry
2     Tarrio, Case No. 12-20947.
3              Good afternoon, counsel.  State your appearances,
4     please, for the record.
5              MS. JOHANNES:  Good afternoon, your Honor.  Vanessa
6     Johannes on behalf of the United States.  With me at counsel
7     table is the case agent in this matter, FBI Special Agent Rod
8     Novales.
9              THE COURT:  Good afternoon.
10             MR. FEILER:  Good afternoon, your Honor.  Jeffrey
11    Feiler on behalf of Henry Tarrio.  I would waive his presence
12    for this afternoon's proceedings.
13             THE COURT:  Good afternoon.
14             We are here on the Government's motion for sentence
15    reduction pursuant to Rule 35 of the Federal Rules of Criminal
16    Procedure.
17             Ms. Johannes, you may be heard.
18             MS. JOHANNES:  Yes, your Honor.
19             The Government moves for a Rule 35 sentence reduction
20    for Mr. Henry Tarrio based on the cooperation that he's given
21    to the Government.
22             And, your Honor, just by way of background, just to let
23    you know, this is a three-Defendant case.  What this involves
24    is the theft of diabetic test strips.  The Defendants in this
25    case, including Mr. Tarrio, wasn't responsible for the actual

1   theft.  That occurred in Kentucky off of a freighter or truck.
2   But once the diabetic test strips got here to Miami, he was
3   part of the reselling of those diabetic test strips to end
4   users.  Part of that reselling included rebranding the test
5   strips to make sure that the end users wouldn't realize that
6   they were, in fact, part of a stolen lot.
7           From what we knew about Mr. Tarrio's role, he was kind
8   of like the marketing person in this scheme.  He was the most
9   knowledgeable, I guess, about computers and how to sell things
10  online and market things.  He wasn't actually rebranding the
11  product, but that was his role.
12          From the beginning, your Honor, since this case was
13  taken down, Henry Tarrio was probably the most cooperative from
14  day one.  From day one, he was the one who wanted to talk to
15  law enforcement, wanted to clear his name, wanted to straighten
16  this out so that he could move on with his life.  And he has in
17  fact cooperated in a significant way.
18          He assisted law enforcement in prosecuting 13 other
19  individuals.  Those cases were all done federally.  I'm not
20  sure if it was done in one case or one indictment.
21          (Confers with Special Agent Novales privately.)
22          MR. JOHANNES:  Two indictments.  The case agent has
23  informed me it's two indictments.
24          And I know that the AUSAs on those cases were Norman
25  Hemming and Robert Watson.  I've conferred with them, and they

1  did explain to me that Henry Tarrio was listed on the
2  Government's witness list and that was conveyed to counsel in a
3  inducing a plea for those 13 individuals.
4          I don't know the sentence those 13 individuals received
5  because as of the time I conferred with them, sentencing had
6  not occurred yet.
7          In addition to playing a role in that, Henry Tarrio did
8  play a role with respect to the City of Miami's undercover
9  operation into this illegal gambling ring.  The Court has heard
10 about that with respect to Adrian Marino.  Now, with respect to
11 Henry Tarrio, I don't know what exact role he played with that.
12 If the Court is so inclined with respect to both the federal
13 case that Henry Tarrio assisted on as well as the City of
14 Miami, I can ask the case agent to provide us further
15 information as to exactly what Henry Tarrio did with respect to
16 both of those cases.
17         THE COURT:  Did he testify before the grand jury?
18         MS. JOHANNES:  My understanding is he did testify
19 before the grand jury.  If you would like me to ask the case
20 agent which case that occurred on, I can.
21         THE COURT:  That's fine.
22         MS. JOHANNES:  Does your Honor want to hear from the
23 case agent?
24         THE COURT:  If the agent has any knowledge of the City
25 of Miami.

1         SPECIAL AGENT NOVALES:  Yes.  Rod Novales, FBI Miami.
2         I do have information about the case regarding the City
3    of Miami.  I am aware that Henry Tarrio was working with a
4    detective regarding the illegal gambling operation within that
5    city.  In fact, I had a drive-by surveillance with Henry Tarrio
6    where he showed me the two locations that were engaged in
7    illegal gambling.
8         I've made several attempts to contact that detective
9    from the City of Miami, but I have never gotten any response
10   since the investigation was initiated.
11        THE COURT:  Mr. Feiler?
12        MR. FEILER:  Good afternoon, your Honor.
13        Regarding Mr. Tarrio, first of all, I think, as the
14   Court has heard and certainly the original sentencing
15   reflected, that Mr. Tarrio was essentially the least culpable
16   in this case to begin with.  The test strips having been stolen
17   in Kentucky and then brought here by Mr. Marino, ultimately,
18   Mr. Tarrio became involved essentially as a salesman in the
19   matter.
20        Mr. Tarrio was the first to cooperate in the case; and
21   as a consequence of his cooperation, that led to the pleas of
22   guilty by Adrian Marino and Roberto Marino and ultimately their
23   cooperation as well.
24        Mr. Marino, as we heard, did appear before the grand
25   jury on June 14th under the supervision of the agents.  He

1  conducted an undercover operation at his own risk, whereby
2  diabetic test strips were sold to a Mr. Macchetti for $8,000.
3  And Mr. Macchetti was one of the people who were closer to the
4  original theft in the case and somebody that the Government was
5  particularly interested in.
6  　　　　　He then in August attempted another undercover
7  operation with a second set of diabetic test strips.
8  　　　　　Beyond that, in March, Mr. Tarrio was involved in
9  another undercover operation involving anabolic steroids.  The
10 individual's name was Fabrizio.  And ultimately, as a
11 consequence of his undercover role in this, that individual was
12 arrested and indicted.
13 　　　　　Further, along with the Hialeah Police Department,
14 Mr. Tarrio again was involved in undercover operations
15 regarding wholesale prescription narcotics, resulting in two
16 arrests.
17 　　　　　Further, in conjunction with the City of Miami in July
18 and working with the agent as a consequence of his information,
19 they successfully raided a grow house and seized 60 pounds of
20 marijuana.
21 　　　　　In August, likewise, another grow house, resulting in
22 the seizure of another 40 pounds of marijuana.  And also again
23 in July of another grow house in the city of Miami, which at
24 that point was essentially in between cycles and was an
25 inactive hydroponics lab.

1            Mr. Tarrio further worked in an undercover capacity in
2     a case involving information pertaining to an illegal immigrant
3     smuggling ring and, again at his own risk, in an undercover
4     role met and negotiated to pay $11,000 to members of that ring
5     to bring in fictitious family members of his from another
6     country.
7            And then of course in another situation, you've heard a
8     little bit about the illegal gambling ring, which again
9     Mr. Tarrio was involved.
10           In addition to all of these productive cooperations, he
11    also assisted in approximately ten other attempts at being
12    productive.  And oftentimes, they may have failed because the
13    local police department just didn't have the manpower.  But
14    these regarded in one instance anabolic steroids and in another
15    instance cocaine, in another instance MDMA and in another
16    instance credit card theft.
17           Your Honor, frankly, in all the years, which is now
18    more than 30 that I've been doing this, I've never had a client
19    as prolific in terms of cooperating in any respect.
20           I'm going to, if you would, ask the Court to reduce his
21    sentence by 18 months.  But since Mr. Tarrio received a
22    sentence of 30 months in the first place, and he's done
23    approximately going on about 12 right now, 18 months by
24    percentage would be in the approximately 60 percent range.
25           But I think that under ordinary circumstances, that if

1  he were to have a higher sentence, given the range of
2  cooperation that he gave, certainly in comparison to the other
3  Co-Defendants in this case, that a reduction of five years or
4  even seven years wouldn't be unusual in another case had he
5  received a higher sentence.
6          Given that, for example, the Co-Defendant, Adrian
7  Marino, received a reduction of 20 months and didn't do
8  anywhere near as much as Mr. Tarrio, I think 18 months is
9  certainly warranted in his case.
10         THE COURT:  How much is the Government asking for in
11 reduction?
12         MS. JOHANNES:  Yes, your Honor.  The Government's
13 asking for a 33 percent reduction, which would bring
14 Mr. Tarrio's sentence to 20 months by my calculation.
15         And, your Honor, I did want to respond a little bit to
16 what Mr. Feiler had stated.
17         THE COURT:  Yes.
18         MS. JOHANNES:  It's true that the Defendant did
19 cooperate with respect to grow houses.  The agent never
20 received information from those officers, detectives, about the
21 status of that or what had occurred with that, although he
22 tried to follow up.  So that's why the Government did not put
23 that as part of the basis for the Rule 35 reduction.
24         As well, with respect to the immigration and the INS
25 smuggling ring, the agent has told me nothing came out of that.

1  He did attempt to cooperate as well as he attempted to
2  cooperate in other respects, but nothing -- no arrests came out
3  of any of those attempts and no cases were built from them.
4       Your Honor, I would say this: I know Mr. Feiler has
5  stated that normally in federal court we see such high
6  sentences that when you ask for 18 months at a Rule 35 hearing,
7  it doesn't appear like a lot. And here it is appearing like a
8  lot because Mr. Tarrio originally got 30 months.
9       The reason the Government's asking for 33 percent, your
10 Honor, as opposed to a 60 percent reduction not just with this
11 Defendant, but the other Defendants, is because the sentences
12 actually have to mean something. They did start with
13 relatively low sentences by what we see in the federal system.
14 And that's because of the way the guidelines work with respect
15 to pharmaceutical theft. And the guidelines are what they are.
16      But 30 months for reselling diabetic test strips on the
17 market, you know, dealing in a case that actually had a
18 significant monetary consequence is not something light. And
19 30 months is a relatively low sentence when you start talking
20 about the big picture of things.
21      So asking for 60 months -- a 60 percent sentence
22 reduction is a lot. I will agree Henry Tarrio did a lot of
23 work. He did more work than the other Defendants by far. And
24 he was the most cooperative from day one.
25      But we're already starting off at a low place, if you

1 will, your Honor.  That's why the Government is not asking for
2 sentence reductions that are so high.
3             THE COURT:  I'm going to grant the Government's motion
4 for sentence reduction pursuant to Rule 35 of the Federal Rules
5 of Criminal Procedure.
6             I find that the Defendant has provided substantial
7 assistance in the investigation and prosecution of other
8 persons involved in criminal conduct pursuant to Rule 35(b).
9             Under *United States versus McVay*, at 447 F.3d 1348, a
10 2006 decision, the Court should include various factors in
11 determining the appropriate reduction when granting a motion
12 under Rule 35.
13            And the first factor is the Court's evaluation of the
14 significance and usefulness of the Defendant's assistance,
15 taking into consideration the Government's evaluation of the
16 assistance.
17            And here, the Government has indicated that the
18 Defendant cooperated in a significant way, allowing the
19 Government to proceed with two indictments of 13 persons.  He
20 was listed on the witness list.  He testified before a grand
21 jury and he was the most cooperative Defendant from day one.
22            He was knowledgeable regarding the technological
23 aspects of the underlying offense.
24            His counsel argues regarding his other cooperation.
25            Let me ask the Government, as far as him going

1  undercover regarding test strips, a similar offense, did that

2  occur as part of his cooperation for the Federal Government?

3  SPECIAL AGENT NOVALES: Your Honor, he was assisting

4  mainly Roberto Marino in that operation. But he was there. He

5  was an effective part of the investigation.

6  THE COURT: Was he undercover as well?

7  SPECIAL AGENT NOVALES: No, ma'am.

8  THE COURT: So his counsel indicates a number of

9  undercover assistance that he had regarding steroids, three

10 grow houses, a smuggling ring and gambling as well as other

11 attempts to cooperate.

12 The second factor is the truthfulness, completeness and

13 reliability of the information or testimony provided by the

14 Defendant. Implicit in both sides' arguments is that he was

15 truthful, complete and reliable.

16 The third factor is the danger or risk of injury to the

17 Defendant. As he participated in several other investigations

18 undercover, implicit in that is a certain amount of risk.

19 Also, the timeliness of the assistance. And here, he was the

20 most cooperative Defendant from day one.

21 And the nature and extent of his assistance, which was

22 providing testimony to the grand jury, information allowing the

23 Government to indict 13 other persons and being prepared to

24 testify as well as the other undercover.

25 MS. JOHANNES: Your Honor, the case agent wanted to

1   clarify something that he had stated to the Court.

2          THE COURT:  Yes.

3          SPECIAL AGENT NOVALES:  Your Honor, regarding the

4   undercover operations, I was referring to the federal

5   investigation.  When it came to the steroids and the diabetic

6   test strips undercover operations, Henry Tarrio assisted

7   Roberto Marino, but he was not the key player in those

8   operations.

9          Henry Tarrio was the key component in the local police

10  department investigations regarding the marijuana and the other

11  illegal drug investigations, cocaine, MDMA and such.  But those

12  investigations -- again, I'm not -- I am aware of them.  I know

13  that he had an active role and he was a key component in them.

14  But not -- no specific information was ever provided to me in

15  writing by those agencies.

16         THE COURT:  Thank you, sir.

17         So he did provide information or assistance in the

18  federal investigations regarding test strips and steroids and

19  did some potential undercover work in state investigations

20  regarding grow houses, smuggling and gambling.

21         SPECIAL AGENT NOVALES:  Correct.

22         THE COURT:  So I find that a 45 percent reduction is

23  the appropriate reduction, reducing his sentence to 16 months.

24         And I find, after considering the 3553(a) factors,

25  including the nature and circumstances of the offense, the

```
 1  history and characteristics of the Defendant, the need for the
 2  sentence imposed to reflect the seriousness of the offense, to
 3  promote respect for the law and provide just punishment,
 4  supports that 45 percent reduction.
 5          So I will enter an amended judgment and commitment
 6  order amending his sentence to 16 months.  All other provisions
 7  of the original judgment and commitment order remain in full
 8  force and effect.
 9          Anything further?
10          MS. JOHANNES:  Nothing from the Government, your Honor.
11          THE COURT:  Thank you.
12          MR. FEILER:  Nothing, your Honor.  Thank you.
13          THE COURT:  We're in recess in this matter.
14          MS. JOHANNES:  Have a good afternoon, your Honor.
15          THE COURT:  Thank you.  You, too.
16          (Proceedings concluded.)
```

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

```
_____          /s/Lisa Edwards
   DATE               LISA EDWARDS, RDR, CRR
                      (305) 439-7168
                      Reporterlisaedwards@gmail.com
```